UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN P. CLUNE, *as Executor of the Estate of Barbara B. Clune, individually and on behalf of all others similarly situated*, and JAMES E. FISHER, *individually and on behalf of all others similarly situated*,

                    Plaintiffs,

-against-

DESMOND T. BARRY, JR., WINGED FOOT GOLF CLUB, INC., JOHN DOES NOS. 1 – 10, DANIEL L. MOSLEY, GAIL G. GARCIA, JOHN D. GILLESPIE,

                      Defendants.

No. 16-CV-4441 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Kevin P. Clune, as Executor of the Estate of Barbara B. Clune, and Plaintiff James E. Fisher bring this putative class action against Defendants. They seek a judgment designating Plaintiffs as class representatives and certifying the class action. In addition, Plaintiffs request that the Court find that Defendants are liable for violations of the Securities and Exchange Act § 10(b), commission of common law fraud, and breach of their fiduciary duties to Plaintiffs and the class. (Am. Compl., ECF No. 62.) Plaintiffs also seek rescission of allegedly fraudulently induced sales of Winged Foot Holding Corporation ("WFHC") shares and dissolution of WFHC. (*Id.*) Currently before the Court is Plaintiffs' motion for class certification. (ECF No. 99.) For the reasons articulated below, Plaintiffs' motion is DENIED.

## BACKGROUND

The background is summarized here only to the extent that it pertains to Plaintiffs' motion for certification and this Opinion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/26/19

In 1921, WFHC was formed and authorized to issue 600 shares, to be sold to the members of the Winged Foot Golf Club ("Club"). (Am. Compl. ¶¶ 22 & 28.) Initially, all WFHC shareholders were also members of the Club. (*Id.* ¶ 28.) In the 1930s, the Club began admitting yearly, and eventually regular, members who were not required to own shares in WFHC. (*Id.* ¶¶ 32 & 104.) The Club also began to purchase WFHC shares. (*Id* ¶¶ 121 – 28.)

Shortly after its formation, WFHC purchased land which it leased to the Club for an initial term of twenty-one years. (*Id.* ¶ 22.) In exchange, the Club, in addition to paying all taxes, insurance costs, and property maintenance fees, placed all of its dues and gross receipts into a general fund to be used for specified expenses and as rent paid to WFHC. (*Id.* ¶ 61.) The lease was renewed in 1945 and was amended two years later to require $30,000 in annual rent payments, replacing the previous arrangement. (*Id.* ¶ 108.) This version of the lease has been renewed on multiple occasions.

On September 15, 1961, in anticipation of a lease renewal, the Club obtained a legal memorandum from a law firm about the treatment of WFHC and the status of the lease. (*Id.* ¶ 129); (*See* Decl. of Adam C. Mayes in Supp. Ex. 8, ECF No. 101.) Plaintiffs claim that since receiving that memorandum, Defendants have provided false and misleading statements relating to the value of WFHC shares to WFHC shareholders. (*Id.* ¶ 290.) Some of these shareholders, allegedly, sold their shares in reliance on this information, and Plaintiffs bring this action on behalf of all such individuals (the "Class").[1] (*Id.*)

## LEGAL STANDARDS

For a matter to proceed as a class action, a plaintiff must satisfy the four prerequisites of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. Rule 23(a). Specifically, for

---

[1] The proposed Class does not include Defendants, the present directors and officers of the Club or WFHC, and the families or affiliates of those individuals. (Am. Compl. ¶ 290.)

certification, Rule 23 requires a showing that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id.* The party seeking class certification bears the burden of satisfying these prerequisites by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

In addition to satisfying the Rule 23(a) prerequisites, the plaintiff must qualify the proposed class under at least one of three subsection Rule 23(b) categories. Fed. R. Civ. P. 23(b); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Plaintiffs in this case seek qualification under Rules 23(b)(2) and (b)(3).

Certification of a class under Rule 23(b)(2) is appropriate in cases where the defendant "has acted or refused to act on grounds generally applicable to the class," thus entitling class members to "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). Such certification should occur only "where a single injunction would provide relief to each member of the class." *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (internal quotation, modification, and citation omitted), *aff'g* 285 F.R.D. 279 (S.D.N.Y. 2012). Where, as here, plaintiffs seek substantial monetary damages, they should seek "certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively." *See Sykes*, 285 F.R.D. at 293. Plaintiffs seek such certification.

A Rule 23(b)(3) class may be certified upon finding that common legal or factual issues predominate over individual issues and that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Plaintiffs need not prove, however, that the legal or

3

factual issues that predominate will be answered in their favor. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1196 (2013). "Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," but it is a factor to "consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 – 09 (2d Cir. 2015).

A certifying court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citing *In re IPO Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).

District courts have broad discretion on class certification because the "district court is often in the best position to assess the propriety of the class." *Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 98 (2d Cir. 2007); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

## DISCUSSION

Plaintiffs' motion for certification is denied for two reasons. First, the proposed Class would be unmanageable. Second, and more importantly, Plaintiffs fail to meet Rule 23's numerosity requirement.

Part of determining whether a class action is a superior means of adjudicating a matter is assessing manageability, or "the likely difficulties in managing a class action." Rule 23(b)(3)(D). Although Rule 23(b)(3) enumerates four factors, "manageability 'is by the far, the most critical concern in determining whether a class action is a superior means of adjudication.'" *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). The manageability consideration "encompasses the whole range of practical problems that may

render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 94 S. Ct. 2140, 2146, 417 U.S. 156, 164 (1974).

Here, a panoply of practical concerns renders a class action an inappropriate means of adjudication. The proposed Class includes individuals who have inherited shares from relatives, who inherited their shares from the generation before going all the way back to 1921 in some cases. (*See* Decl. of Adam C. Mayes in Supp. Ex. 14 (Clune Tr. 73:16 – 20).) Although Plaintiffs represent that it will not be difficult for them to identify these individuals, (Pls.' Mem. of Law in Supp. of Pls.' Mot. for Class Certification ("Pls.' Mot.") p. 39, ECF No. 100), the Court disagrees. Almost a century has passed since some of the original shares were issued, (Decl. of Adam C. Mayes in Supp. Ex. 2). Identifying Class members will likely involve examining estate documents for former shareholders, determining the sufficiency of transmission of shares to heirs, and potentially resolving disputes between potential heirs to shares in multiple states.[2] Plaintiffs estimate that the Class will include approximately 170 members. (Pls.' Mot. p. 18.) Such an undertaking for over one hundred individuals and discrete transactions, sprawled over many decades and most likely across state lines, presents substantial manageability concerns. *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (noting that a case involving different conveyances by different parties over more than a century would be "a nightmare of a class action.").

Assuming the proposed Class would be manageable, Plaintiffs fail to show that the Class is so numerous that joinder of all members is impracticable, a prerequisite for class certification under Rule 23(a). Plaintiffs initiated this action on June 13, 2016. The only individuals the

---

[2] By Plaintiffs' own admission, "[t]he members of the Class are both significant in number and geographically dispersed." (Pls.' Mot. p. 38.)

Court was able to identify with claims arising within the statutory period are the two named Plaintiffs and Kevin T. Hoffman, and Plaintiffs were able to point no others through their pleading, motion papers, or evidence in the record. (Am. Compl. ¶¶ 255 – 56 & 258); *see generally* (Pls.' Mot.); (Pls.' Reply Mem. of Law in Further Supp. of Pls.' Mot. for Class Certification, ECF No. 104); (Pls.' Response to Supplemental Authority, ECF No. 109.)

Instead Plaintiffs rely on the doctrines of equitable estoppel and fraud discovery. They argue that the statute of limitations should be tolled because Defendants fraudulently concealed facts that might have put potential Class members on inquiry notice of the alleged fraud. (Pls.' Mot. p. 33.) However, the Court rejected this precise argument in a related case, *Busher v. Barry*, a shareholders derivative suit with facts and allegations similar to those in the current action. (No. 14-CV-4322(NSR), docket 227 (S.D.N.Y. Mar. 12, 2019) ("*Busher* Opinion").) The plaintiffs in both *Busher* and this case claim that the defendants—primarily leaders in the Club and WFHC—intentionally misled them over several decades by failing to disclose to the respective plaintiffs—shareholders and sellers of WFHC stock—material facts about WFHC, its shares, and its connection to the Club. (*Busher* Compl., 14-CV-4322, docket 1, ¶¶ 8, 9, 58); (Am. Compl. ¶¶ 1, 7 – 8.) In *Busher*, the Court held that neither equitable estoppel nor the fraud discovery rule tolled the statute of limitations because with reasonable diligence, the *Busher* plaintiffs could have discovered the allegedly illegal activity earlier. (*Busher* Opinion pp. 9 – 13). The *Busher* plaintiffs were on inquiry notice, and the same is true here.

Under the fraud discovery rule, plaintiffs have two years from the date on which fraud was discovered or could have been discovered with reasonable diligence to file suit. NYCPLR § 213(8). Whether fraud could have been discovered with reasonable diligence is an objective standard. *Sejin Precision Indus. Co., Ltd. v. Citibank, N.A*, 726 F. App'x 27, 30 (2d Cir. 2018).

For the purposes of the fraud discovery rule, plaintiffs "need only have known of the possibility of fraud, not of the actual nature of the alleged fraud." *Bilick v. Eagle Elec. Mfg. Co.*, 807 F. Supp. 243, 254 (E.D.N.Y. 1992) (quoting *Bresson v. Thomson McKinnon Sec., Inc.*, 641 F. Supp. 338, 345 (S.D.N.Y. 1986)) (internal quotation marks omitted). Likewise, "[u]nder this doctrine [of equitable tolling], the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence." *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)) (internal quotation mark omitted).

With reasonable diligence, the putative Class members could have discovered Defendants' alleged deception and activity against WFHC's interests. Plaintiffs here were or should have been aware of the possibility of misrepresentation and fraud for the same reasons discussed in *Busher* and the reasons below. Plaintiffs allege that, "starting relatively early in the Club's history," Defendants failed to properly provide notice to WFHC shareholders, particularly those who did not belong to the Club, of annual shareholder meetings. (Am. Compl. ¶ 250.) This failure is sufficient to put Plaintiffs on inquiry notice. *See Bilick*, 807 F. Supp. at 254 (holding that the shareholder plaintiffs had inquiry notice because the defendant failed to provide them with certain information required under company by-laws over a period of years); *see also Cupersmith v. Piaker & Lyons P.C.*, No. 14-CV-1303(TJM)(DEP), 2016 WL 5394712, at *7 (N.D.N.Y. Sept. 27, 2016) ("[T]he inquiry notice standard saddles the investor with responsibilities like reading prospectuses, reports, and other information related to the investments." (internal quotation mark omitted) (quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507, 512 – 13 (3d Cir. 2006))). Moreover, Plaintiffs should have been aware of the

7

possibility of deception or illegal activity based on the obvious discrepancy between the value of land[3] and the $30,000 annual rent in the renewed lease, of which shareholders were notified. (Decl. of Adam C. Mayes in Supp. Ex. 5); *see Phillips v. Generations Family Health Cent.*, 657 F. App'x 56, 59 (2d Cir. 2016); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 447 (S.D.N.Y. 2014) (noting that equitable estoppel did not apply to the plaintiffs because there was publicly available information that should have caused them to act).

A class action cannot be certified unless the plaintiff meets each of the prerequisites specified in Rule 23(a), including numerosity. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (noting that a plaintiff must satisfy all of the Rule 23(a) prerequisites to obtain a certification under Rule 23(b)(3)); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 23 (2d Cir. 2003) (stating that a plaintiff may only maintain a class action under Rule 23(b)(2) if all of the threshold prerequisites of Rule 23(a) are met). While courts presume numerosity for classes larger than forty, *see Pa. Pub. Sch. Emp.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014), a proposed class of three individuals falls far short of the presumption threshold. *MacNamara v. City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011) (stating that courts will "generally find that the numerosity requirement is satisfied when a class comprises 40 or more members . . . and not satisfied when the class comprises 21 or fewer."); *see also Novella v. Westchester County*, 661 F.3d 128, 144 (2d Cir. 2011). Joinder of three individuals into one suit is not impracticable. *See Errico v. Stryker Corp.*, 281 F.R.D. 182, 186 (S.D.N.Y. 2012). Accordingly, the Court cannot grant Plaintiffs' motion for certification.

---

[3] The Club sits on 280 acres of "valuable improved" real estate in Westchester, County, New York and has hosted major golf tournaments on multiple occasions. (Am. Compl. ¶ 4); Winged Foot Golf Club, History, https://www.wfgc.org/history, last accessed July 25, 2019. Clearly, the land has a fair market value of more than $30,000 per year.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for certification is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 99.

Dated: July 26, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge