```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/23/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
KEVIN P. CLUNE, et al.,                                      :
                                                             :
                                                             :
                        Plaintiffs,                          :   16-cv-4441 (NSR) (JCM)
            -against-                                        :
                                                             :   **OPINION & ORDER**
DESMOND T. BARRY, Jr., et al.,                               :
                                                             :
                        Defendants.                          :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Kevin P. Clune, as Executor of the Estate of Barbara B. Clune, and James E. Fisher (collectively, "Plaintiffs") commenced this action on June 13, 2016 against Defendants Desmond T. Barry, Jr., Winged Foot Golf Club, Inc. ("WFGC"), John Doe Nos. 1-10, Daniel L. Mosley, Gail G. Garcia, and John D. Gillespie (all three as Executors of the Estate of George J. Gillespie, III) (collectively, "Defendants"), alleging that Defendants committed violations of federal securities law, common law fraud and breach of fiduciary duties in negotiating lease renewals that destroyed the market value of Plaintiffs' shares in the Winged Foot Holding Corporation ("WFHC").

On September 20, 2022, Plaintiffs filed a motion for leave to amend their complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. ("Plaintiff's Motion", ECF Nos. 127-28.) On April 13, 2023, Magistrate Judge Judith McCarthy issued a Report and Recommendation ("R&R") that recommended the Court deny Plaintiff's Motion. (*See* ECF No. 147.) Plaintiffs filed timely objections to Judge McCarthy's R&R. (ECF No. 148.) For the following reasons, this Court REJECTS the R&R and GRANTS Plaintiff's Motion.

**BACKGROUND**

The facts are taken from the R&R, unless otherwise noted. The Court assumes familiarity with the factual and procedural background of this case, as set forth in the R&R.

Defendant WFGC maintains and operates a 280-acre property in Westchester County, New York, which includes two golf courses, a clubhouse, and other amenities. (R&R at 1). The WFHC is the owner of the property. (*Id.*) The WFHC was incorporated in 1921 pursuant to the New York State Business Corporations law, and issued 600 shares. (*Id.* at 2.) The WFHC used the money raised from the sale of the 600 shares to buy 280 acres of land in Mamaroneck, New York, where it constructed two golf courses and associated buildings. (*Id.*) Defendant WFGC was organized as a membership corporation and was formed for the purpose of maintaining and operating the property. (*Id.*) To fulfill that purpose, the WFHC leased the land to the WFGC beginning in 1924 for a 21-year term, with provision for two 21-year term renewals. (*Id.*) In 1947, the lease was amended to require the WFGC to pay a $30,000 annual rent payment to the WFHC. (*Id.*)

As alleged by Plaintiffs, originally, ownership of a share of the WFHC was a prerequisite to use the WFGC's facilities, and membership was limited to 600 individuals. (*Id.*) However, during the 1930s, when faced with financial strain caused by the Great Depression, the WFGC began admitting temporary members, who paid yearly dues, that were not required to hold shares in the WFHC to use the facilities. (*Id.*) Ultimately, the WFGC permanently removed its policy requiring that full-time members own at least one share in WFHC in 1949. (*Id.*) This change created a division of interests between the shareholders and non-shareholders; continuous renewal of the lease to the WFGC at a below-market rate benefits the non-shareholders, while

harming the WFHC shareholders, who are deprived of the opportunity to receive market rate or sell the land, which would maximize the value of their shares. (*Id.*)

Around 1950, the WFGC amended its bylaws to allow the WFGC to acquire shares of the WFHC owned by deceased or resigned members "at the prevailing price then fixed by the [WFGC] Board." (*Id.*) In 1961, in anticipation of another lease renewal, WFGC obtained a legal memorandum from a law firm rendering advice about WFHC and its lease. (*Id.* at 3.) Thereafter, Plaintiffs allege that the WFGC continued to buy shares of WFHC, and provided false and misleading information about the value of WFHC shares to WFHC shareholders. (*Id.*) The WFGC attained majority ownership of WFHC in 1983, and has continued to increase its majority share since. (*Id.*) Moreover, the WFGC's lease has been renewed multiple times, each maintaining the $30,000 annual rent payment. (*Id.*) The most recent renewal was executed in 2013 and extends the lease through 2071. (*Id.*)

Plaintiff Clune filed the instant action on June 13, 2016. (*See* ECF No. 1.) In 2017, Clune amended his complaint to add Plaintiff Fisher and additional factual allegations. (*See* ECF No. 62.) Plaintiffs subsequently moved for class certification (ECF No. 99), which the Court denied on June 26, 2019 (ECF No. 110). The Second Circuit denied Plaintiffs' request for leave to appeal the denial of class certification pursuant to Rule 23(f) on November 7, 2019. (ECF No. 114.)

On September 20, 2022, Plaintiffs filed the instant motion for leave to amend their complaint. (ECF No. 127.) On April 13, 2023, after considering the parties' submissions, Judge McCarthy issued the R&R recommending that this Court deny Plaintiff's Motion. (ECF No. 147.) On April 27, 2023, Plaintiffs filed written objections to the R&R. ("Ptfs.' Obj.", ECF No. 148.)

3

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide that a magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed. R. Civ. P. 72(b)(1). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." *Id*.; *accord* 28 U.S.C. § 636(b)(1).

When reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court may also "adopt those portions of the [Report and Recommendation] to which no objections have been made and which are not facially erroneous." *West v. Sheahan*, No. 12-CV-08270, 2016 WL 67789, at *1 (S.D.N.Y. Jan. 4, 2016) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 170 (S.D.N.Y. 2003)); *see also* 28 U.S.C. § 636(b)(1)(A) ("[T]he court may reconsider any pretrial matter under this subparagraph . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.")

However, when a specific objection is made, the district court must review the contested sections *de novo*. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b) ("The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule."); *see, e.g., Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). In a *de novo* review, a district court must consider the "[r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdich,*

No. 04-CV-5061(RJH), 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks and citations omitted). Objections must be "specific and clearly aimed at particular findings" in the Report and Recommendation. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

## DISCUSSION

### I. The RICO Amendment Bar

Plaintiffs seek leave to file the proposed Second Amended Complaint ("PSAC", ECF No. 129-1), which adds alternative claims for relief under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§1961 *et seq.*, based on the same course of conduct that is already alleged in the present complaint. Plaintiffs argue that they can plead RICO claims in the alternative based on the same conduct as their securities fraud claims because there is a dispute between the parties about whether WFHC shares qualify as securities under federal law. (Pltfs.' Obj. at 8.) Judge McCarthy, however, found that Plaintiffs were merely "recasting" alleged actionable securities fraud conduct as mail and wire fraud in contravention of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (R&R at 16.) Because such recast claims would ultimately be futile, given they are statutorily prohibited under the PSLRA, Judge McCarthy denied the Plaintiffs' Motion. (*Id.* at 19.) The Court disagrees with the R&R's conclusion that Plaintiffs' RICO claims are futile under the PSLRA.

Section 107 of the PSLRA amended the RICO statutes to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). In other words, Section 107 (the "RICO Amendment") "bar[s] civil RICO claims based on allegations of securities fraud." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011). "[T]he

5

purpose of the bar [i]s to prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." *Id.* (internal quotation marks omitted). The RICO Amendment "was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2021 WL 1226984, at *27 (S.D.N.Y. Mar. 31, 2021) (alteration in original) (quoting *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999)); *see also MLSMK Inv. Co.*, 651 F.3d at 278-79 (same); *Fezzani v. Bear, Stearns & Co.*, 2005 WL 500377, at *3 (S.D.N.Y. Mar. 2, 2005) ("The amendment also bars recasting conduct that would be actionable securities fraud as mail or wire fraud.").

Judge McCarthy rejected Plaintiffs' attempt to plead the RICO claims in the alternative by citing a line of RICO Amendment cases where courts "rejected similar attempts to circumvent the PSLRA bar and dismissed RICO claims brought in the alternative." (R&R at 16.) As Plaintiffs note, however, these cases did not involve disputes about the basic issue—present here—of whether the financial instruments in question are securities in the first place. (Pltfs.' Obj. at 10.) Rather, the plaintiffs in those cases argued that, because federal securities fraud regulations did not provide a private right of action for aiding and abetting liability, the securities fraud alleged by their complaints might not ultimately be actionable by them and, therefore, alternative pleading was permissible. *See Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,* 612 F.Supp.2d 267, 280-281 (S.D.N.Y. 2009); *Fezzani,* 2005 WL 500377, at *4. The Second Circuit rejected these arguments and held that "the PSLRA bars civil RICO claims alleging predicate acts of securities fraud even where a plaintiff cannot itself pursue a

6

securities fraud action against the defendant." *MLSMK Inv. Co.,* 651 F.3d at 277-278. By contrast, "there are no 'predicate acts of securities fraud' in the instant action—actionable by or against anyone—if WFHC shares do not qualify as securities in the first place." (Pltfs.' Obj. at 11.) In other words, the relevant dispute here is not whether Plaintiffs can pursue a securities fraud action against Defendants, but, rather, whether the financial instruments at issue qualify as securities at all. This was not the case in the precedent that Judge McCarthy relied upon, in which there was "no argument before the Court that the equity interests [at issue] were not securities," *Thomas H. Lee Equity Fund V,* 612 F. Supp. 2d at 280, and no dispute that the conduct at issue was "actionable as securities fraud," *Fezzani,* 2005 WL 500377, at *4.

By contrast, if there is a dispute over whether the instruments in question qualify as securities, this Court has attempted to resolve said dispute before ruling on the applicability of the RICO Amendment bar. For example, where a plaintiff has failed to "plead[] additional facts sufficient to rebut the presumption that the…promissory notes underlying their RICO claim are securities," the Court dismissed RICO claims pursuant to the RICO Amendment bar. *See Bongiorno v. Baquet,* 2021 WL 4311169, at *16 (S.D.N.Y. Sept. 20, 2021). Conversely, where the Court has determined that the financial instruments in question are definitively *not* securities, this Court has permitted RICO claims concerning these instruments to move forward, precisely because such claims do not (and, indeed, cannot) concern allegations of securities fraud. *See Monterey Bay Mil. Hous.,* 531 F. Supp. 3d at 721–22 (barring RICO claims against "Guaranteed Investment Contracts" that qualified as securities, but sustaining RICO claims concerning fraud in the setting of contractual interest rates on private loans because the latter financial instruments were not securities). Finally, if unable to determine whether the instruments at issue are securities, this Court has held that "the inquiry should continue to determine whether the stock

7

[at issue]…constitute securities," and reserved judgment. *See Ling v. Deutsche Bank*, No. 04 CV 4566(HB), 2005 WL 1244689, at *6 (S.D.N.Y. May 26, 2005).

"[T]o determine whether an alleged predicate act in a civil RICO claim is in connection with the purchase or sale of securities and is therefore barred by the RICO Amendment, the Court must focus its analysis on whether the conduct pled as the predicate offenses is *actionable* as securities fraud." *Bongiorno*, 2021 WL 4311169, at *14 (internal quotation marks and citation omitted) (emphasis added).

> [B]ecause it is not clear based on the current record whether the transactions at issue here involved 'securities,' it consequently is unclear whether [D]efendants' alleged conduct is 'actionable' under the securities laws. Therefore, the Court is unable to determine at this stage of the litigation—*i.e.,* prior to a jury's determination on the question of whether the [WFHC shares] here were [securities]—whether the PSLRA bar applies to preclude [P]laintiffs' civil RICO claims.

*See Marini v. Adamo*, 812 F. Supp. 2d 243, 261 (E.D.N.Y. 2011), *aff'd* 644 F. App'x 33, 36 (2d Cir. 2016) (summary order). If the scheme alleged by Plaintiffs turns out ultimately to "not involve[e] securities at all,…[s]uch a scheme (assuming it satisfie[s] the other elements of a civil RICO claim) would not be barred by the RICO Amendment." *See In re Platinum-Beechwood Litig.,* No. 18-CV-10936 (JSR), 2019 WL 2569653, at *5 (S.D.N.Y. June 21, 2019). Accordingly, at this stage, the Court will permit Plaintiffs to plead, in the alternative, RICO claims based on the Defendants' alleged misconduct. Ultimately, the question of whether the WFHC shares constitute securities will be resolved, and Plaintiffs will only be able to seek relief based on one of their claims—either securities fraud or RICO, but not both.

The Court accordingly rejects the R&R's finding that Plaintiffs' proposed RICO claims are barred by the RICO Amendment and grants Plaintiffs leave to include such claims in their Second Amended Complaint.

8

## II.    Separate Accrual Rule

Plaintiffs contend that their proposed RICO claims are timely under the Second Circuit's "separate accrual" rule, which provides that "a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." (Ptlfs.' Obj. at 12 (quoting *Bingham v. Zolt,* 66 F.3d 553, 559-560 (2d Cir. 1995).) Judge McCarthy, however, found that the separate accrual rule was "inapplicable" to Plaintiffs' RICO claims because Plaintiffs' injuries flow from the same "single alleged scheme" that forms the basis of their securities fraud claims. (R&R at 21-22.) The Court disagrees with the R&R's conclusion that the separate accrual rule is inapplicable to Plaintiffs' proposed RICO claims.

RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 58 (2d Cir. 1998). Under the separate accrual rule, the RICO limitations period begins "afresh with each new injury." *Id.* at 59. For the separate rule to apply, the injury for which relief is sought must be "new and independent." *Bingham*, 66 F.3d at 560-61. For example, where a defendant employs a variety of schemes to defraud a plaintiff, each scheme can give rise to a new civil RICO cause of action with a corresponding four-year limitation period. *See id.* at 559-61. By contrast, where a party alleges a single scheme and said "scheme was fraudulent at the outset, …continuing efforts to conceal the initial fraud [are] not separate and distinct fraudulent acts resulting in new and independent injuries." *In re Merrill Lynch*, 154 F.3d at 59–60; *see also Lorber v. Winston*, 962 F. Supp. 2d 419, 447–48 (E.D.N.Y. 2013) (holding that separate accrual rule was inapplicable where plaintiff "allege[d] one singular

9

scheme…which was fraudulent at the outset," and any further injuries "simply followed from the execution of that scheme").

Here, Plaintiffs' RICO claims allege an injury distinct from "the ongoing derivative injuries that occurred throughout Defendants' longstanding scheme—*i.e.,* injuries to *WFHC*, which affected shareholders only indirectly and collectively," which is "the direct injury inflicted on Plaintiffs personally when Defendants transacted with each Plaintiff individually to defraud him of his WFHC share." (Pltfs.' Obj. at 13.) The direct injury Plaintiffs suffered stems from a scheme distinct from the scheme aimed at WFHC. This case is therefore distinguishable from *In re Merrill Lynch Partnerships Litigation,* which Judge McCarthy relied upon (R&R at 21), in which the plaintiffs suffered a single injury when defendant, through a single scheme, fraudulently sold investments to them and then continued to make a number of false statements to plaintiffs as "continuing efforts to conceal the initial fraud." *Merrill Lynch Partnerships,* 154 F.3d at 59–60. In other words, in *Merrill Lynch,* the plaintiffs' injury was complete from the moment that they purchased the fraudulent investment. *Id.* at 59 (explaining that at the time of purchase, "the amount of damages was clear and definite, and the injury was ripe") (internal quotation marks omitted). In this case, however, Plaintiffs each suffered a distinct loss through personally transacting with the Defendants regarding their WFHC shares. *See Republic of Colombia v. Diageo N. Am. Inc.,* 531 F. Supp. 2d 365, 449 (E.D.N.Y. 2007). Their alleged additional financial losses are independent from the original injury stemming from Defendants' perpetual extension of the sweetheart lease. As a result, the Court disagrees with the R&R's conclusion that the separate accrual rule is inapplicable to Plaintiffs' RICO claims and instead applies the rule to hold that Plaintiffs direct RICO claims accrued when each Plaintiff sold his individual share—in 2012 (Clune) and 2016 (Fisher). (*See* PSAC ¶¶ 265, 267.)

### III. Timeliness of Plaintiff Clune's RICO Claim

Having determined that the separate accrual rule applies to Plaintiffs' proposed RICO claims, the Court next addresses the timeliness of Plaintiff Clune's RICO claims. Clune sold his inherited share around January 2012 (*id.* ¶ 265)—just over four years before he filed the original complaint—which means that the timeliness of his RICO claims (unlike Plaintiff Fisher's claims) depends on when he should have discovered his resulting injury. The RICO limitations "period begins to run when the plaintiff has 'actual or inquiry notice of the injury.'" *Yien-Koo King v. Wang*, No. 14 CIV. 7694 (JFK), 2018 WL 1478044, at *6 (S.D.N.Y. Mar. 26, 2018) (internal citation omitted). A plaintiff is charged with inquiry notice when "a reasonable person should have discovered the RICO injury." *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1118 (S.D.N.Y. 1993). Reassuring statements by a fiduciary or advisor, however, "will prevent the emergence of a duty to inquire or dissipate such a duty." *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03CIV.3120(LTS)(THK), 2005 WL 1902780, at *8 (S.D.N.Y. Aug. 9, 2005) (quoting *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003)).

Here, Clune filed the original complaint on June 13, 2016. (*See* ECF No. 1.) Thus, if Clune had actual or inquiry notice of his alleged injuries before June 13, 2012, his RICO claims are time-barred unless an exception to the limitations period applies. *See Yien-Koo King*, 2018 WL 1478044, at *6. Judge McCarthy found that Clune, who inherited his WFHC share from his mother, was on inquiry notice of any RICO claims no later than 1983, when Defendants' alleged fraud directed at WFHC began. (R&R at 22.) But "a disclosure cannot trigger inquiry notice unless it relates *directly* to the fraudulent misrepresentations or omissions at issue." *Fisher v. Reich*, No. 92 CIV. 4158 (MBM), 1995 WL 23966, at *5 (S.D.N.Y. Jan. 10, 1995) (emphasis

11

added); *see also Morin v. Trupin,* 809 F.Supp. 1081, 1097 (S.D.N.Y.1993) ("[t]he triggering financial data must be such that it *relates directly* to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants") (emphasis in original). Clune's RICO claims concern misrepresentations from Defendant Barry that WFHC "shares could only be sold or transferred back to the Club" and "transfer… to any outsider was simply prohibited." (*See* PSAC ¶ 265.) Any disclosures on behalf of the Defendants from decades prior concerning their fraud directed at WFHC are distinct from the misrepresentations Barry specifically gave to Clune in and around January 2012. Even if Clune was on inquiry notice of Defendants' fraud aimed at WFHC, it does not follow that he was on inquiry notice that he himself was being defrauded in other ways, including regarding the transferability of his WFHC share. *See, e.g., Fisher*, 1995 WL 23966, at *5 (declining to hold that a RICO claim was time-barred where defendant's disclosures "refer[ed] to the general risks inherent in any investment, not to the alleged improper relationship which generate[d] plaintiffs' complaint"). Such an argument "would allow a defendant to use the statute of limitations as a sword to immunize a second fraud (which might be more difficult to detect)." *See CSI Inv. Partners II, L.P. v. Cendant Corp.*, 2002 WL 925044, at *5 (S.D.N.Y. Feb. 28, 2002).

Moreover, Defendant Barry's personal misrepresentations to Clune were reassuring statements by a fiduciary that prevented Clune from being on inquiry notice of his injuries. Clune, an inheritor with no prior knowledge about WFHC, was entitled to rely on Barry's "reliable words of comfort" as a corporate fiduciary. *See LC Capital Partners,* 318 F.3d at 155. Barry's allegedly false and misleading statements regarding the nature and value of WFHC shares, in turn, could have led Clune astray, thereby preventing the emergence of any duty to inquire. *See In re Pronetlink Sec. Litig.,* 403 F. Supp. 2d 330, 334–35 (S.D.N.Y. 2005) ("red

flags" were "contravened by several allegedly false and misleading statements that could have caused a reasonable shareholder to think all was well"). In other words, Clune's "failure" to inquire further about the fairness of the offer price for his shares "was the intended result of [D]efendants' advice upon which []he had a right to depend." *See McCoy v. Goldberg*, 748 F. Supp. 146, 158–59 (S.D.N.Y. 1990). Therefore, it cannot be said as a matter of law that Clune had sufficient facts to place him on inquiry notice prior to June 13, 2012 and, therefore, that his RICO claims are futile. As a result, he "is entitled to litigate the question of timeliness of the [RICO] action." *See Sedona Corp*, 2005 WL 1902780, at *9. Accordingly, the Court rejects the R&R's conclusion that Plaintiffs' RICO claims would be time-barred and grants the Plaintiffs leave to amend their complaint to add RICO claims.

## IV.     Failure to Cure Deficiencies

Judge McCarthy did not reach Defendants' argument that the PSAC fails to cure deficiencies in prior complaints. (*See* R&R at 23.) The Court finds such argument to be plainly deficient. In making their argument, Defendants rely upon cases where courts disallowed further attempts to replead claims which had been previously dismissed several times on substantive grounds. *See, e.g.*, *Anderson v. Greene,* 2017 WL 3503686, at *14 (S.D.N.Y. Aug. 16, 2017) (denying motion to amend on other, substantive grounds, then denying leave to amend further); *Coal. for a Level Playing Field, L.L.C. v. Autozone, Inc.,* 813 F.Supp.2d 557, 565 (S.D.N.Y. 2011) (same); *Warren v. Stop & Shop Supermarket, LLC,* No. 20 Civ. 8718 (NSR), 2022 WL 815300, at *13–14 (S.D.N.Y. Mar. 16, 2022) (granting motion to dismiss some claims, then denying leave to amend further in relation to those claims). But Plaintiffs have not previously pleaded RICO claims. As such, Defendants' cited authority is inapposite.

To the extent Defendants take issue with non-substantive issues in the PSAC—for example, that the PSAC styles itself as the "Second Amended Class Action Complaint" even though this Court has denied class certification—such amendments can easily be applied to the operative complaint. The inclusion of non-operational text in a proposed amended complaint is not the same as a failure to cure deficiencies.

## CONCLUSION

For the reasons stated above, Magistrate Judge McCarthy's Report and Recommendation is REJECTED in accordance with this Opinion and Order. Plaintiffs' Motion for Leave to Amend is GRANTED. Plaintiffs shall file their Second Amended Complaint on or before October 7, 2024. The Defendants are directed to answer, seek leave to move, or otherwise respond to the Second Amended Complaint on or before October 28, 2024.

Dated: September 23, 2024　　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

14